UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER NEWTON,

                         Petitioner,           **DECISION AND ORDER**
         -vs-                                   No. 04-CV-6205(VEB)

JOHN BURGE, Superintendent,

                         Respondent.
_____

## I.      Introduction

        Petitioner, Christopher Newton ("Newton"), filed a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 seeking review of his conviction in New York State

Supreme Court (Monroe County) on charges of first degree robbery, first degree burglary, and

second degree reckless endangerment. The parties have consented to disposition of this matter by

the undersigned pursuant to 28 U.S.C. § 636(c).

## II.     Factual Background and Procedural History

        The conviction here at issue stems from two incidents which occurred ten days apart in

the summer of 1999 in the City of Rochester and which involved the same victim–Newton's

half-brother, Nekia Newton ("Nekia").[1] During the first incident on July 30, 1999, Newton

confronted Nekia on Bowman Street while Nekia was a passenger in a car driven by Nekia's

friend, Yolanda Hopkins ("Hopkins"). T.229-32.[2] As soon as Nekia noticed Newton's car

coming from the opposite direction, he advised Hopkins to turn her vehicle around, which she

_____

        [1] The charges relating to both incidents were joined in the same indictment for trial.

        [2]  Citations to "T.__" refer to the trial transcript.

did. T.232. Newton drove past Hopkins's car and, once he was directly in front of her, stopped

suddenly, forcing Hopkins to do so as well. Newton and Nekia exited their respective vehicles,

and Newton rushed Nekia. A brief struggle ensued in which Newton stabbed Nekia in the right

lung with a knife. T.268-69. Newton returned to his car and drove forward for a short distance;

he then put his car in reverse and drove backwards at a high rate of speed, striking Hopkins's

vehicle and forcing Nekia to jump on the hood to avoid being hit. T.278.

The second incident, which occurred during the late night of August 8 or the early

morning of August 9, 1999, was a home invasion staged by Newton and two other men. Newton

and his cohorts forced their way into Nekia's house at gunpoint. T.195-96, 215, 297. One of the

men brandished a gun at Rainell Burns ("Burns"), Nekia's girlfriend, told her to "Shut the fuck

up," and forced her to lie on a bed in the downstairs bedroom. Meanwhile, Newton and the other

perpetrator held Nekia at gunpoint in the living room and demanded money from him. T.196-97,

200, 299, 304.

Although each of the intruders wore a mask or a hooded jacket to conceal their identities,

Burns was able to identify Newton based on her familiarity with his voice (she had known him

for two years and had heard him speak approximately twenty times); recognition of his face (a

portion of his face was visible despite his efforts at concealment); the fact that he called Nekia

by his nickname, "Nicky;" and the fact that she heard Nekia refer to him as "Chris." T.198, 216-

17. Although he appeared reluctant to implicate his half-brother at trial, Nekia testified that he

recognized one of the intruders' voices as belonging to Newton. T.298.

At gunpoint, Newton stole a $411 blank money order and about $7 dollars in cash from

Nekia's briefcase, as well as a gold chain from around Nekia's neck. T.279-80. As he was

leaving, Newton announced, "You think I'm playing," and then fired a gun several times into the floor. T.200-02, 305. Newton and his two cohorts then fled.

Newton testified in his own behalf at trial. He admitted that, with respect to the July 30th incident, he had been in a fight with Nekia, but he denied having stabbed him. Newton further claimed that he accidentally backed his car into the one driven by Hopkins. With respect to the home invasion, Newton testified that he was at his sister's house during the time the incident occurred.

With respect to the July 30th incident involving the alleged stabbing and the backing-up of the car, the jury returned a verdict acquitting Newton of second degree assault (N.Y. Penal Law § 120.05(2)) and convicting him of second degree reckless endangerment (N.Y. Penal Law § 120.20). With regard to the home invasion, the jury convicted Newton as charged of three counts of first degree robbery (N.Y. Penal Law § 160.15(2)-(4)) and one count of first degree burglary (N.Y. Penal Law § 140.30(1)). Newton was sentenced to concurrent terms of imprisonment, the longest of which was twelve and one-half years.

On direct appeal, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed his conviction. *People v. Newton*, 298 A.D.2d 896, 748 N.Y.S.2d 93 (App. Div. 4th Dept. 2002). The New York Court of Appeals denied leave to appeal. *People v. Newton*, 99 N.Y.2d 562, 784 N.E.2d 87, 754 N.Y.S.2d 214  (N.Y. 2002). Newton collaterally attacked his conviction by means of a motion to vacate pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 and an application for a writ of error *coram nobis*. Both of these motions were denied.

Newton filed his original habeas petition in this Court on May 7, 2004 (Docket #1). He

filed a proposed amended petition on April 11, 2006 (Docket ## 20-1, 20-2).  The Court ordered

that the original petition and the proposed amended petition be docketed as the amended petition.

Based on the allegations in these docket items, it appears Newton has raised the following claims

for relief: (1) trial counsel was ineffective in (a) failing to object to the cross-examination of

petitioner concerning the circumstances of his arrest, (b) being "unprepared to face a request for

a missing witness charge after petitioner testified that he had an alibi," (c) failing to request a

jury instruction on the alibi defense, (d) failing to investigate petitioner's alibi witnesses, (e)

failing to request a jury instruction on identification, (f) failing to object to the missing witness

charge, (g) failing to "adequately cross-examine petitioner's brother," (h) failing to object when

the "court erred by failing to require the jury to find that petitioner possessed a revolver as an

element of the third, fourth, fifth, and sixth counts of the indictment," and (i) failing to move for

a trial order of dismissal on the third, fourth, fifth, and sixth counts of the indictment on the

ground that the evidence did not establish that petitioner was armed with, used, or displayed,

what appeared to be a revolver; (2) appellate counsel was ineffective in (a) failing to argue that

trial counsel was ineffective in failing to "object or request additional instruction when the trial

court erred when it failed to marshal the evidence evenhandedly" and (b) failing to argue that

trial counsel was ineffective in failing to request a jury instruction on identification; (3) the

prosecutor knew or should have known that one of the victims, Nekia Newton, perjured himself

at trial; (4) newly discovered evidence, in the form of a recantation by Nekia Newton, warrants

overturning petitioner's conviction. The respondent answered the amended petition on June 12,

2006 (Docket ##26-1, 26-2). All of the grounds for relief raised herein appear to be exhausted

and properly before this court. *See* 28 U.S.C. § 2254(b). For the reasons set forth below, the

petition is denied.

## III.     Discussion

### A.     Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996 by the Anti-terrorism and

Effective Death Penalty Act ("AEDPA"), a petitioner seeking federal review of his conviction

must demonstrate that the state court's adjudication of his federal constitutional claim resulted in

a decision that was contrary to or involved an unreasonable application of clearly established

Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual

determination in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d)(1), (2);

*Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

### B.     Merits of the Amended Petition

#### 1.     Ineffective Assistance of Trial Counsel

##### a.     Legal Standard

In order to prevail on a claim of ineffective assistance of counsel within the framework

established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas

petitioner must satisfy a two-part test. First, a petitioner must demonstrate that counsel's

performance was so deficient that counsel was not functioning as "counsel" within the meaning

of the Sixth Amendment to the Constitution. *Id.* at 688. In other words, a petitioner must show

that his attorney's performance "fell below an objective standard of reasonableness." *Id.* Second,

a petitioner must show that counsel's deficient performance prejudiced him. *Id.* at 694. To

establish the "prejudice" prong of the *Strickland* test, a petitioner must show a "reasonable

probability" exists that, but for counsel's error, the outcome of the trial would have been

different. *Id.* at 694.  The issue of prejudice need not be addressed, however, if a petitioner is

unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason

for a court deciding an ineffective assistance claim to . . . address both components of the inquiry

if the defendant makes an insufficient showing on one." *Id.* at 697.

### b.   Alleged Ineffectiveness

### 1.)   failing to object to the cross-examination of petitioner concerning the circumstances of his arrest

Prior to the start of jury selection, trial counsel made an oral motion *in limine* to preclude

the prosecutor from eliciting testimony regarding Newton's arrest, which apparently followed a

lengthy stand-off with police at his sister's house and which involved the S.W.A.T. team and the

use of tear gas. T.11. Trial counsel argued that such testimony would be unduly prejudicial and

likely would reference unrelated felony charges against petitioner pending at the time of his

arrest. The prosecutor opposed the motion, indicating that its witnesses had been instructed to

avoid mentioning the unrelated pending charges. After hearing oral argument, the trial court held

that "[a]t the appropriate time," it would "ask for an offer of proof" from defense counsel. T.12.

During its direct case, the prosecution did not introduce any evidence concerning the

circumstances of Newton's arrest. Newton then took the stand and testified that he could not

have been involved in the home invasion because he was at his sister's house from midnight on

August 8, 1999, until he was arrested on August 9, 1999.  The prosecution argued that defense

counsel thereby "opened the door" to cross-examination about Newton's arrest. T.322. Newton

subsequently testified on cross-examination that he was awakened at about 8:00 a.m. on August

9 when his probation knocked on the door of his sister's house, but that he did not answer the

door because he was scared. Newton also admitted that for the next eight hours he remained inside of his sister's house despite police orders to exit, and that he did not come out until the police fired thirty rounds of tear gas into the house.  *See* T.331-32, 348-39. Newton complains that trial counsel failed to object when the prosecutor cross-examined him about the circumstances surrounding his arrest.

Here, part of the chosen defense strategy was to claim that Newton could not have been present during the home invasion because he was at his sister's house at that time. In furtherance of that defense, Newton testified that he was at his sister's house when the crime allegedly occurred; once he did so, the "door was opened" for the prosecutor to question Newton about what happened while he was at that location. Defense counsel had no basis on which to object to this line of cross-examination since it was he who "opened the door;" that was the trade-off for the introduction of testimony to support Newton's defense that he was not present at the victim's house when the incident occurred. Although, with the benefit of hindsight, one might say that it would have been better to have handled the issue differently or chosen a different strategy, that is an insufficient basis on which to find that counsel's performance was constitutionally deficient. *See Cuevas v. Henderson*, 801 F.2d 586, 590 (2d Cir. 1996).

In *Cuevas*, during the cross-examination of a police officer, defense counsel "opened the door" to the introduction of identification evidence damaging to petitioner's defense when he asked the officer whether any photographs had been shown to the victim. The officer answered that he had shown her sixty photographs; on redirect examination, the prosecutor asked the officer about the photographs. Defense counsel objected but the objection was overruled because it was he who had "opened the door" to questions about the photos shown to the victim. In

response to the prosecutor's questions, the officer then testified that the victim had identified petitioner's photograph, and the prosecutor introduced it into evidence. The Second Circuit commented that "[w]ith the benefit of hindsight it is clear that the introduction of testimony concerning the photo identification hurt rather than helped [petitioner's] case" but that it "appear[ed] from defense counsel's summation . . . that this line of questioning was a matter of strategy." *Id.* As was the case in *Cuevas*, trial counsel made a reasonable strategic decision which this Court may not second-guess on habeas review. Consequently, habeas relief cannot issue on this claim.

### 2.) Failure to be prepared to address the prosecutor's request for a missing witness charge

Newton faults defense counsel for being "unprepared to face a request" for a missing witness charge by the prosecutor at the conclusion of the prosecutor's cross-examination of Newton. The prosecutor asked that the trial court issue missing witness instructions for Newton's former girlfriend Lisa Skaverek ("Skaverek"), whom Newton claimed had witnessed the July 30th incident, and his sister, Shantass Legree ("Legree"), who purportedly could have corroborated Newton's alibi testimony. T.354-55. In opposition, defense counsel presented an articulate argument with respect to why neither witness was called and why a missing witness instruction was not appropriate with respect to either individual. *See* T.355-56. When the trial court indicated that it was inclined to grant the prosecutor's request, defense counsel re-called Newton and elicited an explanation from him as to why Skaverek and Legree were not called. Finally, during his summation, defense counsel cogently addressed any potential concerns that the jury might have had regarding the uncalled witnesses. *See* T.385-86. Thus, contrary to Newton's contention, it appears that trial counsel was prepared to deal with the missing witness

issue presented by Newton's alibi testimony. Furthermore, defense counsel's handling of the issue was well within the bounds of "professionally competent assistance." *Strickland*, 466 U.S. at 690. Because Newton cannot demonstrate that trial counsel's performance was unreasonable, there is no need for the Court to address the prejudice component of the *Strickland* test. *See id.* at 697.

### 3.)        Failure to request a jury instruction on the alibi defense

Newton faults trial counsel for failing to request a jury instruction regarding an alibi defense. Courts in New York have held that the failure to request an alibi charge can be a reasonable strategic decision, where, as here, the alleged alibi is relatively weak, consisting only of the defendant's testimony. *See, e.g.*, *People v. Scott*, 283 A.D.2d 525, 727 N.Y.S.2d 442 (App. Div. 2d Dept. 2001) ("The decision not to request an alibi charge was reasonable in view of the weakness of the defendant's alleged alibi, which consisted solely of his own testimony that he was alone at home at the time of the crime."); *People v. Coleman*, 283 A.D.2d 321, 724 N.Y.S.2d 856 (App. Div. 1st Dept. 2001) ("Counsel's failure to request an alibi charge or to emphasize the alibi issue in summation can be readily explained by the weakness of the alibi testimony."); *People v. Frye*, 210 A.D.2d 503, 620 N.Y.S.2d 993 (App. Div. 1st Dept. 1994) ("[I]t is clear from the record that the defendant's alibi was seriously undermined by evidence adduced at trial, and thus defense counsel's decision not to request an alibi charge may have been a strategic decision."); *People v. Jordan*, 173 A.D.2d 329, 575 N.Y.S.2d 470 (App. Div. 1st Dept. 1991) (declining to find ineffective assistance where the record indicated that "that trial counsel made appropriate pre-trial and trial motions, conducted extensive cross-examination of the People's witnesses, vigorously pursued a misidentification defense, and understandably did not

request an alibi charge on the basis of defendant's brief and contradictory testimony, elicited only upon cross-examination, that he was, and was not, in New York City on the date in question").

Furthermore, "the New York Court of Appeals has held that, even where a defendant presents legally sufficient evidence to establish an alibi defense, the failure to give an alibi jury instruction is not reversible error where "the charge as a whole conveyed the necessary information regarding the [prosecution's] burden of proof.'" *Cruz v. Greiner*, 1999 WL 1043961, at * (S.D.N.Y. 1999) (quoting *People v. Warren*, 76 N.Y.2d 773, 775, 559 N.Y.S.2d 954, 955 (N.Y. 1990); collecting cases and citing, *inter alia*, *People v. Carr*, 165 A.D.2d 741, 742, 562 N.Y.S.2d 379, 379 (App Div. 1ˢᵗ Dept. 1990) (finding no prejudice from failure to give alibi instruction despite "defendant [having] introduced legally sufficient evidence to raise the defense of alibi [to] warrant the charge" where "the charge as a whole conveyed the necessary information concerning the People's burden of proof"; counsel was not ineffective for failing to request alibi instruction "as his purposeful strategy at trial and on summation was to cast doubt upon the reliability of the identification testimony"); *People v. Davila*, 165 A.D.2d 669, 669, 564 N.Y.S.2d 12, 13 (App. Div. 1ˢᵗ Dept. 1990) ("Legally sufficient evidence was introduced to warrant the requested charge. Nevertheless, . . . the court's refusal to give such an instruction does not require reversal, since the charge as a whole adequately explained the requisite burden of proof.").

Under New York law, Newton did present sufficient evidence to warrant the issuance of a specific alibi instruction. However, the decision in *People v. Warren* is dispositive here, and the Court need not address whether trial counsel's performance was constitutionally deficient;

Newton cannot satisfy the second *Strickland* prong which requires a showing of prejudice. *Accord, e.g.*, *Cruz v. Greiner*, No. 98 CIV. 7939(AJP), 1999 WL 1043961 (S.D.N.Y. Nov. 17, 1999);  *Parreno v. Annetts*, No. 04 Civ.10153(GWG), 2006 WL 689511, at *13 (S.D.N.Y. Mar. 20, 2006). Although the trial court did not read the pattern instruction, the actual instruction given to the jury at Newton's trial encompassed the key concepts it contains–namely, that the burden remained on the prosecution to prove that Newton, in fact, was the individual who committed the crimes alleged in the indictment and that the burden remained on the prosecution even though the defendant testified. Moreover, trial counsel argued that it was not Newton who committed the home invasion, and that the victims' identifications of Newton as the perpetrator were of questionable validity. *See* T.372-74.

The Court agrees that it would have been better practice for trial counsel to have requested a specific alibi instruction. However, given the instructions to the jury and the arguments propounded by trial counsel, the Court cannot find that there is a "reasonable probability" that the inclusion of a specific alibi instruction would have altered the outcome of the case. *See Parreno*, 2006 WL 689511, at *13 (rejecting ineffective assistance of counsel claim based on failure to request alibi instruction where petitioner not prejudiced; petitioner's alibi testimony was weak and the proof of guilt was strong). The alibi defense in this case was particularly weak, as Newton had no corroboration for his presence at his sister's house at the time of the incident. Furthermore, the evidence against Newton was compelling. Because Newton cannot demonstrate the level of prejudice necessary under *Strickland*, he cannot establish that counsel was constitutionally ineffective.

**4.)      Failure to investigate and call alibi witnesses**

Newton faults trial counsel for failing to call his sister, Shantass Legree, who resided at 13 Austin Street (the address where he was arrested), and Tanisha Smith, his former girlfriend, as alibi witnesses. "The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Neresian*, 824 F.2d 1294, 1321 (2d Cir. 1987). Because such decisions "fall squarely within the ambit of trial strategy," they will not constitute a basis for an ineffective assistance claim provided that they are "reasonably made." *Id.*; *accord United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992).

When the prosecutor requested a missing witness charge regarding Legree, trial counsel explained his legitimate reason for not calling her as an alibi witness:

> According to my conversations *with Mr. Newton*, his sister was in and out of the house that night. Something had to do with an automobile of a friend of hers being vandalized out in front of the house and she left at one time. I did explore this with him as to whether she could be a possible alibi witness and that she went out of the house and returned at a – after the alleged time of this crime.

T.356 (emphasis added). Thus, Newton's own representations about Legree's whereabouts undermined her value as an alibi witness, and trial counsel made a reasonable strategic decision not to call her as a witness. *See*, *e.g.*, *Eisen*, 974 F.2d at 265.

Tanisha Smith ("Smith"), Newton's former girlfriend, submitted an affidavit in support of his C.P.L. § 440.10 motion asserting that she had a telephone conversation with Newton from approximately 2:00 a.m. to 2:45 a.m. on August 9, 1999. According to Smith, Newton told her that he was at his sister's house on Austin Street. *See* Respondent's Exhibit K at 172. Smith's purported alibi testimony was even weaker than Legree's. Again, trial counsel made a reasonable strategic decision not to call her as a witness. *See*, *e.g.*, *Eisen*, 974 F.2d at 265. On habeas

review, it is not the Court's province to second-guess these reasonable tactical decisions made by

petitioner's trial counsel. Accordingly, habeas relief is not warranted on this claim.

### 5.)      Failure to request a jury instruction on identification

Newton faults trial counsel for failing to request a specific jury instruction on the issue of

identification. However, the trial court properly instructed the jury that the prosecution was

required to prove beyond a reasonable doubt that Newton, in fact, was the individual who

committed the crimes alleged in the indictment. Given the instructions to the jury and counsel's

argument on summation that it was not Newton who perpetrated the home invasion, the Court

cannot find that there is a "reasonable probability" that the inclusion of a specific identification

instruction would have altered the outcome of the case. Thus, Newton cannot demonstrate

prejudice, and this claim of ineffectiveness does not provide a basis for habeas relief.

### 6.)      Failure to object to the missing witness charge

Newton contends that trial counsel failed to "request additional instruction in respect to a

missing witness charge." Petitioner's Supplement to the Amended Petition at 24 (Docket #20-2).

He states that the charge "let this jury infer that another witness should have been called to

testify about the alibi and that since she was not called, she would not have supported the alibi

defense if called . . . [w]ithout instructing the material legal principle applicable to this case,

when petitioner testified bout [*sic*] his alibi." *Id.* The Court is unsure exactly what Newton is

saying trial counsel failed to do or should have done. The Court notes that trial counsel did

object to the prosecutor's request for a missing witness instruction; that objection was overruled.

The trial court's missing witness charge appears to have been proper in all respects, and there

does not appear to be anything in the charge, as given, which would have warranted a repeat

objection by trial counsel. Finally, Newton does not specify what additional language trial

counsel should have requested. This claim is too vague to state a proper claim for habeas relief

and must be dismissed.

### 7.)     Failure to adequately cross-examine petitioner's brother

Newton complains that trial counsel conducted an inadequate cross-examination of

Nekia, his half-brother. In particular, Newton faults trial counsel for failing to highlight the fact

that during his grand jury testimony, Nekia accused Newton of having kicked in the door of his

house and having stolen his truck, his house keys, and $1,000. At trial, however, no such

allegations against Newton were made. The Court does not see the value to Newton of

emphasizing Nekia's grand jury testimony, which was more accusatory toward Newton and

would have elicited evidence of uncharged crimes. To the contrary, it would seem to be a sound

defense strategy to refrain from bringing this testimony–which served to increase Newton's

criminal culpability–to the jury's attention. If anything, the grand jury testimony was closer in

time to the date of the incident and arguably when Nekia's recollection was clearer, and the jury

easily could have credited that testimony over Nekia's trial testimony, in which he obviously

was attempting to minimize his half-brother's involvement in the home invasion. Thus, trial

counsel's chosen strategy was reasonable, and there is no basis for challenging it on habeas

review. *See Strickland*, 466 U.S. at 690-91 (holding strategic choices made after a thorough

investigation of the facts and law are "virtually unchallengeable," although strategic choices

"made after less than complete investigation are reasonable precisely to the extent that

reasonable professional judgments support the limitations on investigation" ).

### 8.)     Failure to object to the trial court's failure to charge that

**petitioner possessed a revolver as an element of the third,
fourth, fifth, and sixth counts of the indictment**

Newton contends that trial counsel should have objected because the trial court "changed the theory of the prosecution" by failing to instruct the jury that the "dangerous instrument" or "deadly weapon" which he allegedly possessed during the burglary and robbery was a revolver. In the present case, it was the prosecution's consistent position that the "dangerous instrument" or "deadly weapon" possessed by Newton during the burglary/robbery was a revolver. When the trial court instructed the jury, it first read the indictment verbatim; the indictment included clear language that Newton was alleged to have possessed a revolver. The trial court then provided the legal definition of "deadly weapon" and "dangerous instrument." Newton complains that the trial court, in subsequently instructing the jury on the specific elements of the third, four, fifth and sixth counts, did not identify the implement involved as a revolver. *See* T.426-33 (third count (deadly weapon/loaded weapon from which a shot could be discharged); fourth count (a dangerous instrument, article or substance which was readily capable of causing death or serious physical injury); fifth count (defendant displayed what appeared to be a pistol, revolver or other firearm; sixth count (deadly weapon/loaded weapon from which a shot could be discharged)).

Contrary to Newton's contention, it appears that the trial court did reference the revolver specifically in regard to the fifth count of the indictment. As to the other counts, the Court cannot find that the trial court "changed the theory of the prosecution" in its instruction. *See*, *e.g.*, *People v. Harris*, 273 A.D.2d 807, 711 N.Y.S.2d 370 (App. Div. 4th Dept. 2000) (rejecting contention that trial court erred in failing to include the words "by punching him [the victim]" when it instructed the jury with respect to the elements of the crimes charged in the indictment). Nor was there a variance between the allegation noted in the indictment and the proof at trial. *Cf.*

*People v. Cook*, 253 A.D.2d 498, 678 N.Y.S.2d 108 (App. Div. 2d Dept. 1998) (rejecting contention that the trial court erred in denying motion to dismiss the count of the indictment which charged criminal possession of a weapon, "to wit: a knife", because evidence adduced at trial showed that the defendant only possessed a razor; although indictment stated that the defendant possessed a dangerous instrument with intent to use that instrument unlawfully against another, the variance between the allegation noted in the indictment and the proof at trial did not change the People's theory of the case). Newton had sufficient notice of the crimes with which he was charged and was able to prepare an adequate defense. The jury was adequately instructed, when it was read the full indictment, that the dangerous implement with which Newton was charged was a revolver. Thus, Newton was not prejudiced by trial counsel's omission in this respect. Habeas relief accordingly will not issue on this claim.

> **9.)   Failure to move for a trial order of dismissal on the third, fourth, fifth, and sixth counts of the indictment on the ground that the evidence did not establish that petitioner was armed with, used, or displayed, what appeared to be a revolver**

Newton contends that trial counsel was ineffective in failing to move to dismiss the third, fourth, fifth and sixth counts of the indictment on the basis that the proof adduced at trial did not establish that he used a revolver during the burglary and robbery. Even had trial counsel made a motion for a trial order of dismissal on this specific basis, thereby preserving the issue for appellate review, neither the outcome of Newton's trial or nor the result of his appeal would have been more favorable to him. First, there was more than ample evidence that Newton used or displayed what appeared to be a revolver during the course of the home invasion to warrant sending the case to the jury. Second, the evidence was certainly sufficient for a rational trier of fact to conclude that Newton used or displayed what appeared a revolver during the home

invasion. The victim, Nekia, testified that he observed a gun in Newton's hands and that he thought it was a revolver. T.281-82. The victim's girlfriend testified that she saw Newton point a black handgun at Nekia's stomach. T.200-01. Nekia further testified that before Newton left, he fired his gun into the floor. The jury chose to credit these two witnesses' testimony, and Newton has offered no basis for disturbing the jury's credibility determinations. Because Newton cannot establish that there is a "reasonable probability" that the outcome of the criminal proceeding would have been more favorable to him had trial counsel moved for an order of dismissal based on the trial court's failure to mention the revolver, he was not prejudiced by trial counsel's omission.

### 3.  Ineffective Assistance of Appellate Counsel

#### a.  Legal Standard

A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)), *cert. denied*, 508 U.S. 912 (1993)).  A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. *Mayo*, 13 F.3d at 533-34; *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001).

#### b.  Alleged Grounds of Ineffectiveness

##### 1.)  Failure to argue trial counsel's ineffectiveness

Newton contends that appellate counsel was deficient in failing to argue that trial counsel

was ineffective in failing to "object or request additional instruction when the trial court erred when it failed to marshal the evidence evenhandedly." This is the language of the point-heading in Newton's brief. However, the argument under the point heading consists of a single paragraph and appears to deal only with the missing witness charge. There is no reference to any marshaling of evidence by the trial court. Consequently, this claim is too vague to state a proper ground for habeas relief.

Newton also argues that appellate counsel erred in failing to argue that trial counsel was ineffective in failing to request a jury instruction on identification. The trial court's instruction adequately informed the jury that it needed to find that Newton, in fact, was the individual who perpetrated the crimes alleged in the indictment. Because the jury was properly instructed despite trial counsel's failure to request a specific identification charge, Newton was not prejudiced by trial counsel's alleged error. As discussed above, prejudice is a critical aspect of any ineffective assistance claim. Appellate counsel made a reasonable choice not to put forward this claim which had little to no likelihood of success on appeal.

### 4.    Introduction of Perjured Testimony and
### 5.    Newly Discovered Evidence

Newton contends that "material evidence" that the prosecution knew, or should have known, to have been false, was introduced at trial–namely, Nekia's "false testimony of alleged Robbery, Burglary and Larceny." Amended Petition at 22 (Docket #20-1). Newton claims that Nekia's "initial crime investigation report" was false, that he gave "conscience [*sic*] and knowing perjured testimony before the Grand Jury," and that he gave "false trial testimony[.]" *Id.* In support of this claim, Newton points to the alleged recantation by the victim, Nekia, concerning the August 9, 1999 home invasion; Newton characterizes this recantation as "newly

discovered evidence" of his innocence.

The only evidence which Newton offers for finding that the prosecutor knowingly suborned perjury is Nekia's "recantation," embodied in an affidavit dated April 18, 2003. Therein, Nekia asserts that there "was never a Robbery or Burglary" at his house on the date in question and that he made the allegations against his brother becase he was "very upset" with him about a "dispute" they had ten days prior to the incident. Respondent's Exhibit M at 198. Nekia explained in his affidavit that he "wanted Chris to go to jail at that time." *Id.*

At the outset, the Court notes that recantations of testimony given on trial traditionally are "looked upon with the utmost suspicion." *Sanders v. Sullivan*, 863 F.2d 218, 225 (2d Cir. 1988) (citations and internal quotation marks omitted); *see also People v. Donald*, 484 N.Y.S.2d 651, 652 (App. Div. 2d Dept. 1985) ("There is no form of proof so unreliable as recanting testimony.") (citations and internal quotation marks omitted). When Newton asserted this claim in his C.P.L. § 440 motion, the motion court commented that there was "no form of proof . . . so unreliable as recanting testimony." County Court Order at 2 (citations omitted), Respondent's Exhibit R at 227. The motion court found that there was "no supportive evidence of the recantation" and "it alone [wa]s insufficient to warrant vacating the judgment." *Id.* (citations omitted).

Motions for a new trial based upon newly discovered evidence are "granted only with great caution in the most extraordinary circumstances." *United States v. DiPaolo*, 835 F.2d 46, 49 (2d Cir. 1987) (internal citations and quotations omitted). Courts are particularly reluctant to grant new trial motions where the newly discovered evidence consists of a witness recantation as such recantations are "'looked upon with the utmost suspicion.'" *United States v. Gallego*, 191

F.3d 156, 166 (2d Cir. 1999) (quoting *United States v. DiPaolo*, 835 F.2d at 49 (citations

omitted)). Tellingly, Nekia never recanted his trial testimony to the district attorney or to the

police. The sole proof of the alleged "recantation" is the uncorroborated affidavit submitted by

Nekia, the petitioner's half-brother who was a reluctant witness for the prosecution at trial. The

Court is unable to find that Nekia's uncorroborated affidavit, standing alone, suffices to establish

that his recantation was credible.

      Even if I were to accept Nekia's "recantation" as true, it does not constitute newly

discovered evidence sufficient to warrant a new trial. A claim "'based on newly discovered

evidence ha[s] never been held to state a ground for federal habeas relief absent an independent

constitutional violation occurring in the underlying state criminal proceeding.'" *Ortega v.

Duncan*, 333 F.3d 102, 108 (2d Cir. 2003) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)

(in turn citing *Townsend v. Sain*, 372 U.S. 293, 317 (1963), for the proposition that evidence that

could not have been presented in the state proceedings "must bear upon the constitutionality of

the applicant's detention")); *see also United States v. Bagley*, 473 U.S. 667, 678 (1985)

("[C]onstitutional error occurs . . . only if the evidence is material in the sense that its

suppression undermines confidence in the outcome of the trial.").

      The Second Circuit has stated that "[o]nly recantations of material testimony that would

most likely affect the verdict rise to the level of a due process violation, if a state, alerted to the

recantation, leaves the conviction in place." *Sanders v. Sullivan*, 863 F.2d 218, 225 (2d Cir.

1988); *accord Ortega v. Duncan*, 333 F3d at 108.  Even if the Court were to accept Nekia's

allegations as true (which this Court explicitly does not find to be the case), they would not

necessarily have resulted in Newton's acquittal: the jury could have convicted petitioner of the

home invasion based upon Rainell Burns's testimony—which has not been assailed by allegations of perjury. In sum, Newton's claim based on newly discovered evidence of alleged prosecution witness perjury is without merit and affords no basis for habeas relief.

## IV.   Conclusion

For the reasons stated above, petitioner Christopher Newton's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:       July 7, 2006
                 Rochester, New York.